UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-cv-62610-BLOOM/Valle

SUN LIFE ASSURANCE COMPANY OF CANADA,

        Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION
and LARRY BRYAN f/k/a LARRY SCHWEIGER,

        Defendants.
_____/

**SUN LIFE ASSURANCE COMPANY OF CANADA'S
MOTION TO COMPEL U.S. BANK TO PRODUCE DOCUMENTS
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Sun Life Assurance Company of Canada ("Sun Life"), pursuant to Fed.R.Civ.P. 37 and Local Rule 26.1, moves to compel U.S. Bank to produce documents.[1]

## I. BACKGROUND

On November 14, 2014, Sun Life Assurance Company of Canada ("Sun Life") filed a Complaint against U.S. Bank National Bank Association, N.A. ("U.S. Bank") and Larry Bryan seeking, *inter alia*, a declaration that a $5 million life insurance policy issued by Sun Life on the life of Phyllis Malkin was invalid ("Malkin Policy") because it was originated by strangers to Mrs. Malkin who conspired to evade anti-wagering and insurable interest laws so that they could bet on her life and profit from her death.

On March 4, 2015, Sun Life propounded its first set of document requests on U.S. Bank. *See* Sun Life's First Set of Document Requests, attached as Exhibit A. On April 3, 2015, U.S. Bank responded with both general and specific objections. *See* U.S. Bank's Response to Sun Life's First Set of Document Requests, attached as Exhibit B. That same day, Sun Life propounded its second set of document requests on U.S. Bank. *See* Sun Life's Second Set of Document Requests, attached as Exhibit C. On May 4, 2015, U.S. Bank again responded with both general and specific objections. *See* U.S. Bank's Response to Sun Life's Second Set of Document Requests, attached as Exhibit D.

In response to Sun Life's First Set of Document Requests, U.S. Bank produced a meager 59 documents consisting of 481 bates-labeled pages. U.S. Bank produced only a single external email and did not produce a single internal email. In response to Sun Life's Second Set of Document Requests, U.S. Bank produced nothing.

---

[1] Counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

The parties met and conferred on numerous occasions over the last two months to address the many deficiencies in U.S. Bank's production. *See* Letter from J. Kelleher to J. Walsh, dated May 14, 2015, attached as Exhibit E; Letter from J. Kelleher to J. Walsh, dated May 26, 2015, attached as Exhibit F; Letter from J. Kelleher to J. Walsh, et al, dated July 29, 2015, attached as Exhibit G. However, the parties have recently reached an impasse.

## II.   STANDARD

The scope of discovery includes "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). To be relevant, the information need only "appear[] reasonably calculated to lead to the discovery of admissible evidence." *Id.* To avoid production, the party opposing discovery "must show either that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26; or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure." *Milinazzo v. State Farm Ins.*, 247 F.R.D. 691, 694 (S.D. Fla. 2007) (citations omitted).

## III.   ARGUMENT

### A.   The Court Should Order U.S. Bank to Conduct a Proper Custodial Collection and Employ Reasonable Electronic Search Terms

Since at least 2001, U.S. Bank, Larry Bryan and entities for which U.S. Bank serves in various representative capacities have played key roles in a stranger-originated life insurance ("STOLI") program that has fraudulently produced thousands of policies on the lives of the elderly. One of the STOLI policies produced by way of this program was the Malkin Policy.

Sun Life has learned through discovery that the aforementioned entities were involved in the origination of the Malkin Policy from the very start. U.S. Bank's role again appears to be that of representative (in various capacities) for certain entities. For example, U.S. Bank's own

documents show that it served as Securities Intermediary to both the so-called "beneficial owner" of the Malkin Policy and the "Originator" of the Malkin Policy as well as the "Fiscal Agent" and something known as the "Titling Trustee."

And yet, U.S. Bank, who claims its production is complete, has only produced a meager 59 documents consisting of a paltry 481 pages – and perhaps most significantly, ***has only produced a single email***.

Simply put, Sun Life finds it extremely difficult to believe that a national bank that played a prominent role in a massive program to produce life insurance policies for sale on the secondary market – and that acted in a representative capacity for a number of the central players in that scheme – would only be able to produce a single email. Indeed, U.S. Bank's own documents refer to other external email as having been sent, but they were not produced. Nor has U.S. Bank produced a single internal email. Such a production is manifestly inadequate on its face. *See, e.g.*, *Fendi Adele v. Filene's Basement*, No. 06-Civ-244, 2009 WL 855955, at *8 (S.D.N.Y. Mar. 24, 2009) (Dolinger, Magistrate J.) ("The initial production of a handful of documents – notably bare of some of the most basic documents that a company of the size and sophistication of Filene's [Basement] would unquestionably maintain – was manifestly inadequate and the representation that there were no more documents was absurd on its face.").

The inadequacy of U.S. Bank's production is likely symptomatic of its improper document collection techniques and its failure to engage with Sun Life in the establishment of an appropriate electronic discovery protocol. Counsel for U.S. Bank has described his document collection technique as consisting of producing U.S. Bank's "file" and asking his client whether it possessed any other responsive documents. *See* Ex. F. Counsel for Sun Life has made it clear on multiple occasions that Sun Life does not consider this technique to be appropriate here and

3

has requested U.S. Bank engage on this issue and to propose a list of appropriate custodians and reasonable electronic search terms.  *See* Ex. F; Ex. G.  However, to date, U.S. Bank has not done so and has instead taken the position that what it has done is sufficient.

But it should go without saying that simply producing your client's "file" and asking it for a blanket confirmation that the file contains all responsive documents is a far cry from the fair and reasonable search required by the rules.  And this is particularly so where (as here) the application of that method results in the collection of only a single external email and no internal emails even though the client was centrally involved in the relevant transaction over the course of many years.  *See, e.g.*, *Fendi Adele*, 2009 WL 855955, at *8 ("It should not require reiteration that litigants have an obligation, when discovery is sought from them, to make reasonable efforts to locate responsive documents, including setting up 'a reasonable procedure to distribute discovery requests to all employees and agents . . . potentially possessing responsive information, and to account for the collection and subsequent production of that information . . . ." (citations omitted)); *id.* (sanctioning party that "made less than vigorous efforts to ensure that people with knowledge of, or access to, the potentially pertinent documents were given specific instructions to search for the categories of documents requested").

U.S. Bank's position on this issue is even more frustrating given how simple and straightforward a reasonable collection and search would be to do.  U.S. Bank is eminently capable of identifying the individuals who would have been involved with the life insurance origination program at issue and with the Malkin Policy specifically.  Moreover, the universe of reasonable search terms would seem to be rather limited (*e.g.*, "Malkin," the policy identification number, etc.)  Finally, had U.S. Bank simply done a reasonable collection and search many of

4

Sun Life's more specific issues with U.S. Bank's production (discussed below at Sections C and D) would probably have been avoided.

This Court should order U.S. Bank to engage with Sun Life in the designation of appropriate custodians and reasonable search terms to apply to the files of those custodians.

### B. The Court Should Order U.S. Bank to Produce All Responsive Documents in its "Custody and Control"

As noted, throughout the time relevant to this case, U.S. Bank has served in a representative capacity for various entities such as the Malkin Policy's so-called "beneficial owner" and its "Originator" and continues act in a representative capacity to this day. U.S. Bank, therefore, has an obligation to produce responsive documents contained in the files of these entities to the extent those documents are within U.S. Bank's control. *See* Fed. R. Civ. P. 34(a)(1) (requiring a party to produce all responsive documents in its "possession, custody, or *control*" (emphasis added)); *Selectica, Inc. v. Novatus, Inc.*, 6:13-cv-1708, 2015 WL 1125051, at *4 (M.D. Fla. Mar. 12, 2015) (explaining that the word "control" is interpreted broadly to include any document that a party has "a legal right, authority, or practical ability to obtain . . . upon demand").

However, U.S. Bank has consistently ignored this obligation. In response to each of the requests in Sun Life's First Set of Document Requests, U.S. Bank represented (subject to other qualifications and conditions) that it would "produce any non-privileged documents in its *possession*, if any, that are responsive to this Request and relevant to this action." Ex. B (emphasis added). U.S. Bank said nothing about producing those documents within its "custody or control," and this caused Sun Life concern. So, on May 26, 2015, Sun Life wrote U.S. Bank explaining, *inter alia*, that U.S. Bank had an obligation to produce all responsive, non-privileged

documents within its "control" even if they were not in its actual "possession." *See* Ex. F. But U.S. Bank ignored this part of Sun Life's letter and has continued to ignore this issue to this day.

Indeed, as recently as July 17, 2015, U.S. Bank represented that it had "produced all responsive documents in its *possession*, subject to the objections previously set forth." *See* Letter from N. Mazanitis to K. Golden, dated July 17, 2015, attached as Exhibit H (emphasis added). But again, U.S. Bank said nothing about documents in its "custody or control" notwithstanding the fact that Sun Life had affirmatively raised U.S. Bank's failure to produce such documents almost two months before. *See id.* Sun Life responded by asking U.S. Bank whether it would affirmatively state that it had demanded from those entities it represented that they produce responsive documents (some of which U.S. Bank's counsel expressly stated to Sun Life's counsel that Coventry likely possessed) and were denied and that U.S. Bank had further exhausted all other practical methods of obtaining the documents. *See* Ex. G. U.S. Bank has not yet responded and Sun Life fears that its eventual response will be more of the same.

Consistent with Federal Rule of Civil Procedure 34(a)(1), this Court should order U.S. Bank to expand its production to include those responsive, non-privileged documents contained within the files of those entities for whom it has and does serve in a representative capacity to the extent those documents are within U.S. Bank's "possession, custody, or control."

    C.    **The Court Should Order U.S. Bank to Produce Documents U.S. Bank Admits it is Withholding[2]**

        1.    **Sun Life's First Set of Document Requests**

---

[2] The nineteen Sun Life document requests to which U.S. Bank is improperly withholding documents can be broken down into two broad categories of similar requests. U.S. Bank's objections to each request in a given category is exactly the same. And Sun Life's reasons for moving to compel are likewise similar within each category. Thus, in an effort to comply with the court's special ten-page limit as well as Local Rule 26.1(i)(2), Sun Life addresses these issues broadly by category within this memorandum and seriatim as required by local rule in Appendix A.

6

U.S. Bank has represented that it is withholding responsive documents to Sun Life's Document Request Nos. 4, 11, 16, 17, 20, 22, and 24. As a general matter, these requests call for the production of documents that:

> (a) identify the relationship among players involved in the life insurance origination program at issue in this case; (b) identify the interests held by various entities in the Malkin Policy (and associated trusts), (c) contain information pertaining to the Malkins' ability to pay for the policy and/or whether they were to receive any benefits in connection with it; and (d) contain information about any life expectancy reports that may have been generated on Mrs. Malkin (particularly those that may have been generated prior to policy application or that were prepared at the behest of people other than Mrs. Malkin).

*See* Ex. A.

U.S. Bank's response to each request is identical. It objects on the grounds that the requests were overbroad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence. *See* Ex. B. U.S. Bank further stated that it would only produce documents "subject to reasonable limitations and further clarifications." *Id.*

Sun Life's requests are highly relevant and material to the claims and defenses at issue in this case, and there is nothing overbroad or unclear about them. *See* Appendix A. The relationship between and among the players involved in the life insurance program at issue and under which the Malkin Policy was originated is highly material to Sun Life's claim that the Malkin Policy was procured in violation of the anti-wagering and insurable interest laws. So too are documents identifying whether Mrs. Malkin could afford to pay the premiums; whether the Malkins would ultimately benefit from the policy; and who may have been running life expectancy reports on Mrs. Malkin (and when they were doing so). The capitalized terms used in the requests are defined, and U.S. Bank knows exactly who and what Sun Life is referring to. Indeed, on May 26, 2015, Sun Life requested U.S. Bank to "identify with specificity the clarity

7

sought and any reasonable limitation [U.S. Bank] would propose," but U.S. Bank never did so. *See* Ex. F.

The Court should order U.S. Bank to produce the withheld documents without delay.

### 2.     Sun Life's Second Set of Document Requests

U.S. Bank has represented that it is withholding responsive documents to Sun Life's Document Request Nos. 4, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22.  As a general matter these requests call for the production of documents that:

> (a) identify people and entities in the life insurance industry and secondary market from whom U.S. Bank will no longer transact or accept business; (b) identify the number of policies that U.S. Bank holds (or held) that have been alleged to lack an insurable interest, constituted stranger-originated life insurance, and/or utilized premium financing; (c) relate to lawsuits in which U.S. Bank was named as a party involving claims over the validity of a life insurance policy, the validity of a trust that owned a life insurance policy, insurable interest, premium financing, life settlements, or other issues pertaining to stranger-originated life insurance; and/or (d) relate to U.S. Bank's monitoring, evaluation, or reporting on the life insurance policies it has owned or benefited from.

*See* Ex. C.

U.S. Bank's response to each of these requests again was identical, objecting on the grounds that the requests were overbroad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence.[3]  *See* Ex. D.

Each of Sun Life's requests is highly relevant and material to issues in this case, particularly the various equitable defenses and counterclaims asserted by U.S. Bank on behalf of itself and the so-called "beneficial owner" of the Malkin Policy for whom U.S. Bank serves as securities intermediary.  *See* Appendix A.  For example, U.S. Bank has raised an *in pari delicto* defense.  *See* U.S. Bank's Answer and Counterclaims, Affirmative Defense No. 10, attached as Exhibit I.  Under Florida law, an *in pari delicto* defense is limited to those situations in which the

---

[3] During the meet-and-confer process, counsel for U.S. Bank clarified that U.S. Bank's objection to these requests was essentially one of relevance.  *See* Ex. F.

8

parties are "equally at fault." *Earth Trades, Inc. v. T&G Corp.*, 108 So.3d 580, 583-84 (Fla. 2003) (citations omitted). The documents sought by Sun Life's Second Set of Document Requests are plainly relevant to U.S. Bank's (and/or those entities for whom U.S. Bank acts as securities intermediary's) level of culpability with respect to the acquisition of the Malkin Policy.

Indeed, if past is prologue, U.S. Bank will likely argue in this case that Sun Life is not entitled to relief because Sun Life allegedly knew or should have known that the Malkin Policy was stranger-originated. And in fact, U.S. Bank has issued numerous discovery requests (to which Sun Life has produced documents) that appear specifically targeted to this issue. Sun Life is absolutely entitled to discovery on the flip-side of the coin, namely whether U.S. Bank (or any of its principles) knew or should have known that the Malkin Policy was stranger-originated.[4] Moreover, there is nothing overbroad or unduly burdensome about these requests; again, the capitalized terms are defined, and U.S. Bank knows exactly what Sun Life is talking about.

## D. The Court Should Order U.S. Bank to Produce the Specific Documents Referenced in U.S. Bank's Own Production

A review of the documents contained in U.S. Bank's production has revealed the existence of a number of agreements between and among U.S. Bank involving the stranger-originated life insurance scheme at issue in this litigation that U.S. Bank did not produce, including:

> (a) Life Policies Origination Agreement, dated as of June 29, 2006 among Coventry First LLC, as Originator and Seller, AIG Life Settlements LLC, as Purchaser, and U.S. Bank National Association, as Fiscal Agent; (b) Originator's Securities Account Control Agreement, dated as of June 29, 2006 by and between Coventry First LLC, a Delaware limited liability company, and U.S. Bank National Association, as securities intermediary; (c) the Purchaser's Securities Account Control Agreement, dated as of June 29, 2006, by and between AIG Life Settlements LLC, a Delaware limited liability company and U.S. Bank National Association, as securities intermediary; (d) Titling

---

[4] The documents Sun Life seeks are also plainly relevant to the bona fide purchaser defense that U.S. Bank intends to pursue insofar as Sun Life is obviously entitled to discovery on the bona fides (or lack thereof) of the entity that purchased the Malkin Policy for whom U.S. Bank serves as securities intermediary.

9

Trust's Securities Account Control Agreement between U.S. Bank National Association, as Titling Trustee and U.S. Bank National Association, as securities intermediary; (e) Amended and Restated Trust and Administration Agreement, dated as of June 29, 2006 by and among AIG Life Settlements LLC, as Depositor, the Titling Trustee, the Titling Trust's Security's Intermediary, AIG Life Settlements LLC, a Delaware limited liability company, as Administrator and U.S. Bank Trust National Association, Wilmington, Delaware, as Delaware Co-Trustee; and (f) Trust and Administration Agreement, dated as of October 2, 2001, by and among Coventry Life Settlements Trust, an Illinois common law trust, as Depositor, Montgomery Capital, LLC, as Initial Depositor, Coventry Life Settlements Trust, as Administrator, the Titling Trustee, the Delaware Co-Trustee, and the Titling Trust's Securities Intermediary.[5]

These documents are responsive to numerous Sun Life document requests asking for the agreements governing the relationship between and among U.S. Bank and the other entities involved in the life insurance origination program at issue in the instant case. *See, e.g.*, Ex. A at Nos. 11, 14. To be clear, these non-produced contracts are specifically referenced by name in the agreements U.S. Bank did produce, and U.S. Bank is a party to each of them. Besides being material in their own right, these agreements are necessary to understand the agreements U.S. Bank did produce insofar as the produced agreements incorporate the unproduced agreements by reference and rely on them to define terms. There is no excuse for these documents not to have been produced.[6]

## IV.  CONCLUSION

Sun Life respectfully requests the Court to grant its motion to compel and enter the Proposed Order attached herewith.

---

[5] U.S. Bank's documents also refer to various emails that it has not produced as discussed above.

[6] U.S. Bank also appears to have failed to produce a number of documents that Sun Life has learned exist, namely (a) the Life Settlement Origination Agreement dated October 2001; and (b) the Pre-Offer Review Submission(s) relevant to Mrs. Malkin (including the pricing sheet, probability of survival calculation, Lavastone's life expectancy report, AVS's life expectancy report, and a copy of pricing illustration).

Dated:  August 3, 2015

PETT FURMAN, PL
Attorneys for Sun Life
Assurance Company of Canada
2101 N.W. Corporate Blvd., Suite 316
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 (fax)


By:____s/Wendy L. Furman
Wendy L. Furman
Fla. Bar No. 0085146
wfurman@pettfurman.com


Michael J. Miller (*pro hac* motion to be filed)
Gregory J. Star (*Admitted pro hac vice*)
Joseph M. Kelleher (*Admitted pro hac vice*)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
(215) 988-2700
(215) 988-2757 fax
Gregory.Star@dbr.com
Joseph.Kelleher@dbr.com
*Attorneys for Sun Life*
*Assurance Company of Canada*

## CERTIFICATE OF SERVICE

I certify that on August 3, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

John K. Shubin, Esq.
Ian E. DeMello, Esq.
Shubin & Bass, P.A.
46 S.W. 1st Street
Third Floor
Miami, FL 33130
jshubin@shubinbass.com
idemello@shubinbass.com
eservice@shubinbass.com
*Counsel for U.S. Bank*

11

        Steven J. Reisman, Esq. *(Admitted pro hac vice)*
        Jonathan J. Walsh, Esq. *(Admitted pro hac vice)*
        Nicole M. Mazanitis, Esq. *(Admitted pro hac vice)*
        Curtis, Mallet-Prevost, Colt & Mosle LLP
        101 Park Ave.
        New York, NY 10178-0061
        sreisman@curtis.com
        jwalsh@curtis.com
        nmazanitis@curtis.com
        *Co-Counsel for U.S. Bank*

    I further certify that on August 3, 2015, I served a copy of this document by email and U.S. First Class Mail on the following:

        Larry Bryan f/k/a Larry Schweiger, pro se
        11720 N.W. 9th Street
        Plantation, FL 33325
        larry@hubbley.com


            s/Wendy L. Furman
            Wendy L. Furman