**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 14-62610-CIV-Bloom**

SUN LIFE ASSURANCE COMPANY
OF CANADA,

      Plaintiff,

vs.

U.S. BANK NATIONAL ASSOCIATION
AND LARRY BRYAN,
f/k/a LARRY SCHWEIGER,

      Defendants.

_____/

**DEFENDANT U.S. BANK NATIONAL ASSOCIATION'S**
**MEMORANDUM OF LAW IN OPPOSITION TO**
**SUN LIFE ASSURANCE COMPANY OF CANADA'S MOTION TO COMPEL**
**U.S. BANK TO PRODUCE DOCUMENTS**

Defendant U.S. Bank National Association ("U.S. Bank") respectfully submits this memorandum in opposition to Plaintiff Sun Life Assurance Company of Canada's ("Sun Life") motion to compel U.S. Bank to produce documents (the "Motion to Compel") pursuant to Fed. R. Civ. P. 36 and Local Rule 26.1.  Several issues addressed in Sun Life's Motion to Compel are now moot.  For the remaining issues, Sun Life has not met its burden of proving that the documents it seeks are relevant.

## STATEMENT OF FACTS

The claims and counterclaims at issue in this case involve Sun Life's refusal to pay a death benefit due under a $5,000,000 life insurance policy insuring the life of Phyllis Malkin (the "Policy").  Sun Life's Complaint alleges three claims against U.S. Bank:  (1) a declaratory judgment claim that the Policy was an illegal wagering contract; (2) a declaratory judgment claim that the Policy lacked an insurable interest at its inception; and (3) a declaratory judgment claim that the owner of the Policy, a trust, was a sham, never came into existence, and therefore lacked the capacity to apply for or enter into the Policy.

In response, U.S. Bank has asserted the following equitable defenses:  (1) failure to state a claim; (2) estoppel; (3) Sun Life's misrepresentations and/or omissions; (4) release; (5) waiver; (6) the incontestability provision and the applicable incontestability statute; (7) statute of limitations; (8) Sun Life's retention of premiums paid to date on the Policy; (9) *in pari delicto*; (10) unclean hands; (11) Sun Life's breach of the Policy; and (12) Sun Life's breach of its duty of good faith and fair dealing in connection with the Policy.  In addition, U.S. Bank asserted four counterclaims against Sun Life:  (1) a declaratory judgment that the Policy is valid and enforceable, there was an insurable interest at the inception of the Policy, and that U.S. Bank is entitled to the death benefit; (2) breach of contract; (3) breach of the duty of good faith and fair dealing; and (4) a declaratory judgment in the alternative, namely that U.S. Bank is entitled to a

return of its premium payments if the Court determines that the Policy is not payable for any reason.

On March 4, 2015, Sun Life served its First Set of Requests for the Production of Documents Directed to U.S. Bank ("Sun Life's First Set of Requests").  On April 3, 2015, U.S. Bank served its Responses to Sun Life's First Set of Requests for Production of Documents ("U.S. Bank's First Responses") whereby U.S. Bank agreed to produce documents responsive to 23 of Sun Life's 30 requests.  The remaining seven requests (namely, Requests 4, 11, 16 – 17, 20, 22, 24) were on their face overbroad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence.  Nonetheless, for these seven requests, U.S. Bank stated both in its First Responses and telephonically to Sun Life's counsel that it would produce responsive documents "subject to reasonable limitations and further clarification of this Request by Sun Life."  Sun Life failed to ever provide this clarification to U.S. Bank.

On April 3, 2015, Sun Life served its Second Set of Requests for Production of Documents on U.S. Bank ("Sun Life's Second Set of Requests").  Again, on their face, these Requests were overly broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  For this reason, U.S. Bank objected to all of Sun Life's Second Set of Requests.[1]  Nonetheless, with respect to Requests 1, 2, 3, 5 – 11, and 23, U.S. Bank confirmed that it did not have any documents responsive to these Requests and advised Sun Life's counsel accordingly.  U.S. Bank reiterated that it objected to Sun Life's Requests 4 and 12 – 22.

Beginning in April 2015, U.S. Bank made its initial document productions to Sun Life, which included responsive documents in U.S. Bank's possession, custody, or control, but did not include documents from Coventry First LLC ("Coventry"), who originated and serviced

---

[1]      Sun Life may argue that many of its Second Set of Requests mimicked U.S. Bank's own requests. However, Sun Life's allegations revolve around the Policy's application and issuance.  Sun Life was involved at this juncture; U.S. Bank was not.  Therefore, certain requests will be relevant to Sun Life, but not U.S. Bank.

the Policy.  U.S. Bank was unable to produce these documents without Coventry's consent.
After various negotiations, the parties filed a Joint Motion for Entry of the Discovery
Confidentiality Order, ECF No. [32], which was entered by the Court on July 13, 2015.  ECF
No. [33].  Shortly thereafter, U.S. Bank produced the Coventry documents to Sun Life.

   On July 29, 2015, almost a month after U.S. Bank and Sun Life had last
substantively discussed the status of U.S. Bank's document production, Sun Life wrote to
complain about the production.  (Motion to Compel, Ex. G.)  In that letter, Sun Life provided
U.S. Bank with an ultimatum:  either U.S. Bank would agree to an extension of the discovery
deadlines in this case within 23 hours or Sun Life would move the Court for relief.  The next
day, U.S. Bank emailed Sun Life, conveying that it would send Sun Life a letter outlining its
position on the various issues raised in the July 29th letter.  Instead of waiting for U.S. Bank's
response, Sun Life filed this Motion to Compel.[2]

## LEGAL STANDARD

   Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any
nonprivileged matter that is relevant to any party's claim or defense."  Relevant matter is defined
as information that "appears reasonably calculated to lead to the discovery of admissible
evidence."  *Id.*  However, discovery "is not without limits."  *Maharaj v. GEICO Cas. Co.*, 289
F.R.D. 666, 669 (S.D. Fla. 2013) (citing *Washington v. Brown & Williamson Tobacco*, 959 F.2d

---

[2]  In violation of S.D. Fla. Local R. 7.1(a)(3), Sun Life failed to meet and confer with U.S. Bank regarding a
number of issues prior to filing its Motion, including:

  (1)  The exact search terms used by U.S. Bank in its document collection methods;
  (2)  U.S. Bank's alleged obligation to produce documents in the possession of Coventry and AIG Life
      Settlements ("AIG");
  (3)  The production of various documents referenced in other documents.

The record does not reflect a "give-and-take" between Sun Life and U.S. Bank.  *See Royal Bahamian Ass'n, Inc. v.
QBE Ins. Corp.*, 744 F. Supp. 2d 1297, 1299 n.2 (S.D. Fla. 2010).  Had Sun Life conferred with U.S. Bank on many
of these issues prior to the filing of its Motion, it would have learned that most of the issues in its Motion are moot.
The parties attended a meet and confer after Sun Life filed its Motion, on August 4, 2015.

1566, 1570 (11th Cir. 1992)).  Courts have long held that "[d]iscovery should be tailored to the issues involved in the particular case." *Washington*, 959 F.2d at 1570 (citation omitted).  The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant. *See Diamond State Ins. Co. v. His House, Inc.,* No. 10-20039, 2011 WL 146837, at *5 (S.D. Fla. Jan. 18, 2011).

## ARGUMENT

### I.    U.S. Bank Has Already Conducted A Proper Custodial Collection And Has Already Employed Reasonable Electronic Search Terms

Contrary to Sun Life's assertions, U.S. Bank employed more than reasonable efforts to locate any responsive and relevant documents.

In collecting documents, U.S. Bank searched four separate locations.  First, U.S. Bank has a shared drive, which contains a life settlements folder.  All life settlements documents are filed in various subfolders in this general life settlements folder.  U.S. Bank searched the entire life settlements folder, not simply the Malkin folder, for documents with any of the following terms:  "Malkin," the Sun Life policy number, or the Coventry ID for the Policy. (Declaration of Russell D. Mosley (the "Mosley Decl."), ¶ 4.)  Sun Life itself concedes in its Motion that "the universe of reasonable search terms would seem to be rather limited (e.g., 'Malkin,' the policy identification number, etc.)."  Second, U.S. Bank searched its hard copy file for any responsive documents.  (*Id.* at ¶ 5.)  Third, U.S. Bank electronically searched the desktops of Russell D. Mosley, Alex Fuentes, and Kristi Lee for documents with any of the following terms:  "Malkin," the Sun Life policy number, or the Coventry ID for the Policy.  (*Id.* at ¶ 6.)  Finally, U.S. Bank searched its archives, which contain files for policies that have matured, for any Malkin related documents as well.  (*Id.* at ¶ 7.)  Any documents found via these four methods, with the exception for attorney-client privileged documents, were produced.  As

such, Sun Life's objections on this ground are moot.[3]

## II.    U.S. Bank Has Already Produced All Responsive Documents In Its "Possession, Custody and Control"

Fed. R. Civ. P. 34(a)(1) requires a party to produce documents in its "possession, custody or control."  "'Control is defined not only as possession, but as the legal right to obtain the documents on demand.'"  *Maale v. Caicos Beach Club Charter, Ltd.*, No. 08-80131, 2010 WL 297808, at *1 (S.D. Fla. Jan. 19, 2015) (quoting *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)) (emphasis added); *see also Pictet Overseas, Inc. v. Helvetia Trust*, No. 13-81088, 2014 WL 5034725, at *8 (S.D. Fla. Sept. 8, 2014) (finding that the plaintiff did not have the authority or ability to order a third party to produce documents).  "The word 'control' has a narrower meaning than 'access to.'"  *Id.* (internal citation and quotation omitted).

Sun Life argues that U.S. Bank has an obligation to produce responsive documents contained in the files of the "beneficial owner" and the "originator" of the Policy, noticeably failing to disclose that AIG is the beneficial owner and Coventry is the originator. U.S. Bank has no legal right to request any documents from AIG.[4]  And Coventry has advised that U.S. Bank only has a legal right to request certain documents from it, namely the Sale Documentation Package which U.S. Bank has produced.[5]  Thus, U.S. Bank has satisfied any obligations to gather documents in its possession, custody, or control.

---

[3]    U.S. Bank notes that Sun Life itself has not provided U.S. Bank with its list of search terms.

[4]    Notably, Sun Life has not requested these documents from AIG presumably because counsel for Sun Life, Drinker Biddle & Reath LLP ("Drinker") currently represents AIG in other matters.  AIG granted Drinker a conflict waiver for this case but in return Drinker agreed not to conduct or participate in any discovery proceedings against AIG unless AIG consents in writing.  AIG has never provided this consent.

[5]    Drinker has also represented Coventry in other matters, including providing advice on the very premium financing documents Sun Life seeks here.  Drinker initially issued a subpoena to Coventry, which it has since withdrawn.  The Pett Furman firm subsequently issued Coventry two subpoenas, and Coventry has begun producing documents in response to those subpoenas.

### III. Sun Life Never Narrowed Its First Set of Request Nos. 4, 16, 17, 20, 22, And 24, And In Any Event, U.S. Bank Has No Responsive Documents

U.S. Bank objected to Sun Life's First Set of Request Nos. 4, 16, 17, 20, 22, and 24 on the grounds that the Requests are "overbroad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence." (Motion to Compel, Ex. B.) U.S. Bank stated both in its First Responses and telephonically that it would produce responsive documents "subject to reasonable limitations and further clarification of this Request by Sun Life." (*Id.*) Sun Life never provided this clarification to U.S. Bank. While U.S. Bank maintains its objections to these Requests, it has since confirmed that it has no documents responsive to Requests 4, 16, 17, 20, 22, and 24 currently in its possession, custody, or control.[6]

### IV. Sun Life's First Set Of Request Nos. 11 And 14 Seek Documents That Are Not Relevant To Any Claim Or Defense Or The Subject Matter Of This Action

Sun Life argues that documents responsive to its First Set of Request Nos. 11 and 14, which include various documents referenced in other agreements, must be produced. (Appendix A to Sun Life's Motion to Compel.[7]) Request Nos. 11 and 14 seek either documents showing the relationships between or among Involved Persons[8] with respect to the Policy, or contracts or agreements relating to the transfer, sale, encumbrance, or assignment of the Policy, and/or any interest in the Trust. (*See* Motion to Compel, Ex. A.) Sun Life argues that it is entitled to these documents because the relationship between the players involved in the alleged

---

[6]     Sun Life argues in its Motion that "U.S. Bank has represented that it is withholding responsive documents to Sun Life's Document Requests 4, 11, 16, 17, 20, 22, and 24." (Mot. at p.7.) With the exception of Request 11, this is incorrect. U.S. Bank simply objected to these Requests.

[7]     We note that Sun Life conveniently includes most of its arguments in Appendix A to its Motion to Compel, thereby bypassing this Court's ten page brief limit.

[8]     According to Sun Life First Set of Requests, "[t]he term ]Involved Persons' means each and every party named as a Defendant m this legal action, including you, as well as their agents, officers, directors, employees, attorneys, accountants, assignees, and other representatives, as well as the Trust, Sub-Trust, SubTrust II, Mrs. Malkin, Paul Malkin, Coventry, LaSalle, Simba, Total Financial, Wilmington Trust, and their agents, officers, directors, employees, attorneys, accountants, assignees, and other representatives."

"stranger-originated life insurance program at issue in this lawsuit" and allegedly under which the Policy was originated is material to Sun Life's claim that the Policy was procured in violation of the anti-wagering and insurable interest laws.  (*See* Appendix A to Sun Life's Motion to Compel.)

These documents, however, are not relevant in this matter.  Indeed, Sun Life is conflating two separate events:  the application for the Policy and the origination of the Policy. Sun Life's claims against U.S. Bank hinge on its argument that the Policy was void *ab initio* because there was no insurable interest at the time the Policy was applied for.  (*See* Compl. ¶ 23). ("[T]o disguise the true wagering nature of the Policy, the applicants knowingly and intentionally misrepresented material information, and affirmatively concealed material information . . .") (emphasis added); (Compl., ¶ 32) ("the Policy was, from the outset, intended as a wager on the death of Mrs. Malkin"); (Compl. ¶ 33) ("the Policy [was] void *ab initio*, meaning that the Policy never came into existence"); (Compl. ¶ 36) ("( . . . because the Trust itself was void *ab initio* . . .), the Trust lacked any insurable interest in the life of Mrs. Malkin.  Accordingly, no insurable interest existed at the time of issuance of the Policy, and the Policy is void *ab initio* for lack of insurable interest."); (Compl. ¶ 40) ("[T]he Trust never came into existence and thus lacked capacity to apply for or enter into the Policy. The Policy is therefore void *ab initio* . . .").

Thus Sun Life's Complaint alleges that there was no insurable interest at the inception of the Policy.  Sun Life does not assert that the Policy owner did not have the right to sell policies to third parties.  These sales are referred to as life settlements, and are lawful.  In any event, U.S. Bank was not involved in the application for the Policy, and any origination of the Policy occurred two years after the Policy was applied for.  The documents describing the relationships between the "Involved Persons," whether or not they are referenced in other

documents, do not speak to whether an insurable interest existed in the Policy at the time the Policy was applied for.  They are also not relevant to any claim or defense in this action.

**V.**      **Sun Life's Second Set Of Requests Seeks Documents That Are Not Relevant To Any Claim Or Defense Of The Subject Matter Or This Action**

U.S. Bank objected to Sun Life's Second Set of Requests Nos. 4 and 12 – 22 on the grounds that the Requests are "overbroad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence."  (Motion to Compel, Ex. D).[9]  These Requests fall into three categories:  (1) Requests regarding to the number of life insurance policies U.S. Bank owns or owned, or U.S. Bank's monitoring of the life insurance policies (Requests 4, 20, 21, and 22); (2) Requests regarding documents relating to premium finance providers, agents, broker general agents, insurance producers from whom U.S. Bank will not transact or accept business (Requests 12, 13); and (3) Requests regarding to documents relating to other lawsuits in which U.S. Bank is a party (Requests 14 – 19).  These Requests are not relevant to the subject matter of this action.[10]

Sun Life fails to explain how these Requests relate to U.S. Bank's role as securities intermediary, or to the application, issuance, or premium financing of the Policy (in which U.S. Bank had no involvement).  *See Washington*, 959 F.2d at 1570 ("[d]iscovery should be tailored to the issues involved in the particular case") (citation omitted).  In addition, Sun Life's Complaint alleges that the Policy was an illegal wagering contract, and that the Policy is void *ab initio*.  ECF No. [01].  Sun Life's Document Requests 4 and 12 – 22 are far broader than the allegations in the Complaint.

---

[9]      U.S. Bank never represented that it was withholding documents responsive to these Requests.

[10]      Sun Life has previously failed to articulate any reasonable basis for its Second Document Requests 4, 12 – 22.  Sun Life's previous justifications only applied to the Requests that Sun Life copied from U.S. Bank's requests, namely Requests 1, 2, 3, 5 – 11, and 23.  (*See* Motion to Compel, Ex. E.)

Sun Life further asserts that the Requests are relevant to the various affirmative defenses and counterclaims asserted by U.S. Bank.  However, Sun Life has failed to show how these documents would be relevant.  Sun Life uses the *in pari delicto* defense as an example of an affirmative defense to which these Requests would be relevant, arguing that the documents sought by Sun Life's Second Set of Requests are "plainly relevant" to U.S. Bank's level of culpability with respect to the acquisition of the Malkin Policy.  However, Sun Life does not explain how these documents are relevant to its claims that the Policy was void *ab initio*.

With regard to Requests 12 – 13, Sun Life also claims that the Requests are relevant based on the "bona fide purchaser defense U.S. Bank says it intends to raise." (Appendix A to Sun Life's Motion to Compel.)  A bona fide purchaser defense refers to whether U.S. Bank is a bona fide purchaser of the specific policy at issue.  But Sun Life cannot show how the requested documents relate to this defense.

Finally, Sun Life argues that U.S. Bank should be required to produce documents relating to other litigations because these documents involve the same types of claims as those at issue here.  Sun Life claims these documents are relevant because:  (1) the question exists whether the Malkin Policy was originated as part of a larger STOLI program; and (2) Sun Life produced these documents and therefore U.S. Bank should be required to do the same.  Sun Life is wrong on both counts.  First, requests seeking all documents produced in another litigation are far too expansive, and a party must demonstrate why the sought after documents are relevant to the present litigation.  *See Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-cv-557, 2013 WL 6170610, at *2-3 (M.D. Fla. Nov. 22, 2013).[11]  Sun Life has failed to do so.  Second, Sun Life does not allege any facts in its Complaint to support its assertions that the Policy was originated

---

[11]     The fact that Sun Life produced documents specifically referenced by U.S. Bank in its document requests that are relevant to this action does not provide Sun Life with grounds to request all documents not relevant to this action from any litigation even vaguely resembling the subject matter of this action.

as part of a larger STOLI program.  Rather, all its allegations are specific to the Policy.  Sun

Life's Requests are overbroad, unduly burdensome, vague, and not reasonably calculated to lead

to the discovery of admissible evidence, and Sun Life has not met its initial burden of proving

that the information sought is relevant.

## **CONCLUSION**

This Court should deny Sun Life's Motion to Compel.

Date:   August 10, 2015

Respectfully submitted,


/s/ Ian E. DeMello _____
John K. Shubin (Fla. Bar No. 771899)
jshubin@shubinbass.com
Juan J. Farach (Fla. Bar No. 957704)
jfarach@shubinbass.com
Ian E. DeMello (Fla. Bar No. 105097)
idemello@shubinbass.com

SHUBIN & BASS, P.A.
46 SW First Street, Third Floor
Miami, Florida 33130
Tel:     (305) 381-6060
Fax:     (305) 381-9457

Steven R. Reisman (admitted *pro hac vice*)
sreisman@curtis.com
Jonathan J. Walsh (admitted *pro hac vice*)
jwalsh@curtis.com
Nicole M. Mazanitis (admitted *pro hac vice*)
nmazanitis@curtis.com

CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

*Attorneys for Defendant*
*U.S. Bank National Association*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notice to Plaintiff's counsel and *Pro Se* Defendant Larry Bryan.

<u>/s/  Ian E. DeMello</u>
Attorney