**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 14-CIV-62610-BLOOM/Valle**

SUN LIFE ASSURANCE COMPANY OF
CANADA,

    Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION, and
LARRY BRYAN,

    Defendants.

_____/

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SUN LIFE
ASSURANCE COMPANY OF CANADA'S MOTION TO PRECLUDE THE EXPERT
<u>REPORTS AND TESTIMONY OF HAL SINGER</u>**

## **TABLE OF CONTENTS**

I.   U.S. BANK FAILS TO MEET ITS BURDEN OF ESTABLISHING THAT MR. SINGER'S FIRST REPORT AND RELATED TESTIMONY IS ADMISSIBLE. .............. 1

    A.   Rule 702 absolutely requires that opinions be based on "the facts of the case." ................................................................................................................................ 1

    B.   U.S. Bank's other excuses miss the mark as well. ..................................................... 4

II.  U.S. BANK FAILS TO MEET ITS BURDEN OF ESTABLISHING THAT MR. SINGER'S REPLY REPORT AND RELATED TESTIMONY IS ADMISSIBLE. ............ 7

III. CONCLUSION ................................................................................................................ 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ascher v. Target Corp.*,
    522 F. Supp. 2d 452 (E.D.N.Y. 2007) ....................................................................................... 4

*Bone Care Int'l, LLC v. Pentech Pharms., Inc.*,
    No. 08-cv-1083, 2010 WL 3894444 (N.D.Ill. Sep. 30, 2010) .................................................. 8

*Brooks v. Outboard Marine Corp.*,
    234 F.3d 89 (2d Cir. 2000) ........................................................................................................ 4

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) .................................................................................................................. 4

*Demar v. D.L. Peterson Trust*,
    No. 1:05-cv-103, 2006 WL 2987314 (N.D. N.Y Oct. 13, 2006) .............................................. 4

*Ferriso v. Conway Org.*,
    No. 93–7962, 1995 WL 580197 (S.D.N.Y. Oct. 3, 1995) ......................................................... 7

*Fisher v. Carnival Corp.*,
    No. 11–22316–CIV, 2013 WL 2157164 (S.D. Fla. May 17, 2013) ......................................... 8

*Honeywell Int'l., Inc. v. Universal Avionics Sys. Corp.*,
    289 F.Supp.2d 493 (D.Del. 2003) ............................................................................................. 9

*Morales v. Am. Honda Motor Co., Inc.*,
    151 F.3d 500 (6th Cir.1998) ..................................................................................................... 4

*Nat'l Sign & Signal Co. v. Am. Bright Optoelectronics Corp*.
    No. 1:06-cv-279, 2008 WL 2951209 (W.D. Mich. Feb. 22, 2008) .......................................... 7

*In re Omeprazole Patent Litig.*,
    No. M–21–81 et al. (BSJ), 2002 WL 287785 (S.D.N.Y. Feb. 27, 2002) ................................. 7

*Rink v. Cheminova, Inc.*,
    400 F.3d 1286 (11th Cir. Fla. 2005) ......................................................................................... 2

*Smelser v. Norfolk S. Ry. Co.*,
    105 F.3d 299 (6th Cir.1997) ..................................................................................................... 4

*TC Sys. Inc. v. Town of Colonie*,
    213 F.Supp.2d 171 (N.D.N.Y. 2002) ........................................................................................ 8

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
   173 F.R.D. 675 (D. Kans. 1997) ................................................................................................4

*United States v. Whitman*,
   555 Fed. App'x. 98 (2d Cir. 2014) ........................................................................................5, 6

*Wurtzel v. Starbucks Coffee Co.*,
   257 F. Supp. 2d 520 (E.D.N.Y. 2003) ......................................................................................4

**STATUTES, RULES & REGULATIONS**

Federal Rule of Civil Procedure 26 ........................................................................................3, 6, 8

Federal Rule of Evidence 702 ...................................................................................................1, 2, 4

I.  **U.S. BANK FAILS TO MEET ITS BURDEN OF ESTABLISHING THAT MR. SINGER'S FIRST REPORT AND RELATED TESTIMONY IS ADMISSIBLE.**

There are several simple realities with regard to Mr. Singer's First Report that U.S. Bank does not, and cannot, deal with:

- **Mr. Singer did not consider a single fact of record as part of his First Report;**

- **The First Report is entirely generic, offering no opinion on this specific case; and**

- **The First Report was written more than two years ago** *for a different case with different facts*.

Under Rule 702, the First Report and all related testimony are inadmissible because Mr. Singer's testimony cannot possibly: (a) "assist the trier of fact to understand *the evidence* or to *determine a fact in issue*;" (b) be "based on *sufficient facts or data*;" or (c) "reliably appl[y] [any] principles [or] methods *to the facts of the case*." *See* Fed. R. Evid. 702 (emphasis added).

U.S. Bank does not actually grapple with these simple realities.  Instead, it nibbles around the edges with unfounded excuses, claiming: (a) there is no rule that requires an expert to actually "apply [his] analysis to the specific facts of the case;" (b) that the First Report is just fine because Mr. Singer is offering a generic "primer;" (c) that Mr. Singer somehow "brings the reader back to the specific context of Mrs. Malkin's investment decision" even though he didn't review any evidence related to Mrs. Malkin or the various transactions at issue in this case; and (d) Mr. Singer's generic opinions are relevant because Sun Life is supposedly "prepared to indict the entire secondary market."  These excuses are legally, factually, and logically incorrect and fail to cure the obvious deficiencies in the First Report.

A.  **Rule 702 absolutely requires that opinions be based on "the facts of the case."**

U.S. Bank concedes that the First Report is unconnected to the specific facts of this case, yet argues this is not a problem.  *See* Response, p. 7 ("[t]here is no rule of evidence or procedure

1

that Sun Life identifies that makes expert testimony inadmissible because it does not apply its analysis to the specific facts of the case."). U.S. Bank misses the clear mandates of Rule 702, requiring that all expert testimony must assist the trier of fact in understanding "*the evidence*" or "*determin[ing] a fact in issue*" and be "based on *sufficient facts or data*," and that the expert reliably apply his expertise "*to the facts of the case*." *See* Fed. R. Evid. 702 (emphasis added).

Here, U.S. Bank has admitted that Mr. Singer's First Report is not connected to the "specific facts of the case," and therefore that this report fails to meet the requirements of Rule 702. *See* Response, p. 7. Oddly, U.S. Bank argues this isn't a problem because under the Eleventh Circuit's decision in *Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. Fla. 2005), the standard under Rule 702 is somehow lower. U.S. Bank contends that *Rink* interprets Rule 702 as simply requiring that expert testimony "assists the trier of fact . . . to understand the evidence *or* to determine a fact in issue." *See* Response, p. 7 (quoting *Rink, supra*, at 1292) (claiming Sun Life is incorrectly reading Rule 702 as having conjunctive requirements). Yet, U.S. Bank fails to appreciate that *Rink* itself cites to the full text of Rule 702 – which contains conjunctive elements, all of which must be met. *See Rink*, 400 F.3d at 1291, n. 6 (citing Rule 702: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, *and* (3) the witness has applied the principles and methods reliably *to the facts of the case*.") (emphasis added). Thus, *Rink* does not lower the bar as U.S. Bank hopes. And for good reason – Rule 702's requirement that expert testimony be linked to the facts of the case is necessary to avoid misleading the jury.

Here, Mr. Singer would mislead the jury by testifying that, among things, life insurers are hostile to the secondary market and that non-recourse loans are legitimate – when Mr. Singer has *no information in this case* (or elsewhere) suggesting that *Sun Life* was hostile to the secondary market or that the non-recourse loan *in this case* was legitimate. As both parties agree, the cornerstone of the Court's gatekeeping function with respect to experts is to ensure the testimony will assist – not mislead or confuse – the trier of fact. Because Mr. Singer's testimony fails to clear this gate, it must be precluded.

To be sure, U.S. Bank fails to cite any case allowing expert opinions that are not based on the actual case at hand. Nor does U.S. Bank cite any case permitting experts to offer opinions based on a report copied and pasted from a different report prepared years before for an entirely different matter, based on entirely different facts. Yet, this is precisely what U.S. Bank and Mr. Singer admit happened here – the First Report is nearly a verbatim copy of Mr. Singer's 2013 Report, which he prepared in a different case, with different parties and different facts. *See* Singer Deposition, Exhibit E to Sun Life's Motion, at 19:1-21:25; 76:9-78:11; *see also* Exhibits F and G to Sun Life's Motion; *see also* U.S. Bank's Response, p. 8 (mentioning Mr. Singer's 2013 Report in that different matter, and admitting that this prior 2013 Report was based on Mr. Singer's alleged review of "numerous case-specific documents" in that prior matter, not the instant case).

And, of course, U.S. Bank doesn't even try to explain how it might be appropriate for Mr. Singer to take an old report from another case and use it over again here.[1] And instead of

---

[1] As it relates to the instant case, Mr. Singer's 2013 Report is akin to any of the various generic articles he has written on the subject of life settlements. A court would certainly not permit an expert to simply take an old article, change the title, and accept it as a report that meets the strict requirements of Federal Rule of Civil Procedure 26 (a)(2)(B). But this is exactly what U.S. Bank is asking this Court to do, and it is not a stretch to realize that U.S. Bank was hoping that the First Report would be good enough to get Mr. Singer's foot in the door, so that at trial it could have him expand dramatically the scope and bases of his opinions.

offering support for the First Report, U.S. Bank criticizes the cases cited by Sun Life, contending they are inapplicable because they deal with causation experts who failed to consider the facts of the cases about which they were testifying. The distinction between so-called causation experts and whatever label U.S. Bank might place on Mr. Singer is one without a difference because Rule 702 does not set different standards for different types of experts. Instead, regardless of the type of expert, Rule 702 mandates that his or her opinions be based on the facts of the case, or else those opinions are irrelevant, unreliable, unhelpful, and misleading.[2]

  **B. U.S. Bank's other excuses miss the mark as well.**

U.S. Bank's other excuses are an effort to explain how Mr. Singer's entirely generic opinions (from another case) somehow relate to issues in this case because without that connection, Mr. Singer's opinions must be precluded. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

U.S. Bank's first excuse is that the First Report offers two generic "primers" – one related to the topic of life settlements, where Mr. Singer allegedly explains this so-called "highly specialized, and somewhat arcane, corner of the life insurance market;" and the other related to

---

[2] *See, e.g., Smelser v. Norfolk S. Ry. Co*., 105 F.3d 299, 305 (6th Cir.1997), *abrogated on other grounds by Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500 (6th Cir.1998) (finding that biomechanics expert opinion regarding injuries sustained in accident lacked reliability because, among other things, it failed to consider important information relating the facts in the case, such as actual facts surrounding accident); *Brooks v. Outboard Marine Corp*., 234 F.3d 89, 92 (2d Cir. 2000) (precluding expert in products liability case where expert did not consider key evidence in case); *Ascher v. Target Corp*., 522 F. Supp. 2d 452, 459 (E.D.N.Y. 2007) (precluding liability expert for failure to base opinions on sufficient facts where expert prepared "report without ever talking to [plaintiff] or reading her deposition transcript."); *Demar v. D.L. Peterson Trust*, No. 1:05-cv-103, 2006 WL 2987314 (N.D. N.Y Oct. 13, 2006) (pathologist not permitted to offer expert testimony because he failed to consider medical evidence from the case); *Wurtzel v. Starbucks Coffee Co*., 257 F. Supp. 2d 520, 524 (E.D.N.Y. 2003) (precluding expert who had no knowledge of the underlying incident, had never met with the plaintiff, and did not review the complaint, discovery responses, or deposition transcripts); *United Phosphorus, Ltd. v. Midland Fumigant, Inc*., 173 F.R.D. 675, 688 -89 (D. Kans. 1997) (expert testimony precluded because expert's knowledge of the actual case was limited to a small body of information, and expert report was written with very little knowledge about the facts of the case).

the topic of premium financing, wherein U.S. Bank contends Mr. Singer "explains . . . how premium financing and non-recourse loans work." *See* Response, pp. 1, 5.

U.S. Bank's argument is bewildering. Relying on a single case, *United States v. Whitman*, 555 Fed. App'x. 98 (2d Cir. 2014), it suggests Mr. Singer's primers are relevant. However, *Whitman* was an insider-trading securities fraud case where the expert was permitted to provide relevant testimony to help the jury understand generally the technical issue of how hedge funds gather information about investment targets, to assist the jury in determining whether the defendant, an investment analyst, had engaged in improper insider trading.[3]

Moreover, Sun Life obtained a copy of the expert report filed in *Whitman*, and that report reveals that, unlike Mr. Singer, the expert in *Whitman* relied on actual evidence from that case (*e.g*., evidence that certain words were said during conversations the defendant had with senior managers at alleged investment targets, and evidence that there had been meetings between the defendant and company management).[4] And, not surprisingly, there is no indication that the expert in *Whitman* copied and pasted a report from a prior case with different facts (as Mr. Singer has done here). Thus, simply because general industry-based testimony might have been helpful and relevant in *Whitman* does not mean that generic primers are proper in every case, and certainly not in a case where the issues are whether a life insurance policy was a wager and/or lacked an insurable interest, and whether a trust was a sham. This does not call for a "primer" on whether life insurers are hostile to secondary market, or one on the legitimacy of non-recourse loans (especially when, as explained before, the "primer" is not tied to this specific case).

---

[3] Exhibiting more hypocrisy, U.S. Bank relies here on a Second Circuit case, yet criticizes Sun Life for doing the same. *See* U.S. Bank's Response, pp. 4-5.

[4] A copy of the expert report in *Whitman* is attached hereto as Exhibit A.

5

Try as is might, U.S. Bank struggles to make any actual connection between the First Report and the real issues in this case. It reveals the frailty of its argument when it resorts to asserting that Mr. Singer somehow "brings the reader back to the specific context of Mrs. Malkin's investment decision." *See* Response, p. 6. But given that Mr. Singer did not review any evidence related to the various transactions in this case, this argument makes no sense.

Finally, U.S. Bank contends Mr. Singer's generic opinions are relevant because Sun Life is supposedly "prepared to indict the entire secondary market." Setting aside U.S. Bank's mischaracterizations of Sun Life's actual claims – which relate not to the secondary market, but rather to the particular transactions involving Mrs. Malkin (and the particular STOLI program that created the policy) and whether the policy at issue was a wager and lacked an insurable interest, and whether the trust was a sham – U.S. Bank completely misses the point. Unlike Mr. Singer's opinions, Sun Life's claims are based on actual record evidence. Mr. Singer had every opportunity to review and educate himself on the particular facts in this case well before he issued his First Report. He instead opted to try to get his foot in the door by submitting a warmed-over, irrelevant report from a different case.

And U.S. Bank fails to provide any convincing explanation for how Mr. Singer's generic testimony would be helpful to the jury in this case. To be sure, testimony about how non-specific premium financing loans might generally work is unhelpful unless Mr. Singer could also connect that testimony to explain how the particular transaction at issue *in this case* worked, and whether the so-called "loan" involving Mrs. Malkin is like the generic premium financing he discusses in his report. But he cannot do this because he never reviewed the actual transactions – and he can't backfill this gap at trial because Rule 26 required a disclosure of the basis of his opinions and he's constrained at trial from expanding the scope of his opinions. *See*, *e.g.*,

*Ferriso v. Conway Org.*, No. 93–7962, 1995 WL 580197 (S.D.N.Y. Oct. 3, 1995) (expert precluded from testifying beyond the scope of her report); *In re Omeprazole Patent Litig.*, No. M–21–81 et al. (BSJ), 2002 WL 287785, (S.D.N.Y. Feb. 27, 2002) (precluding expert in patent litigation from giving opinions or relying on prior art, because he had not disclosed his opinions or reliance concerning those particular documents during discovery); *Nat'l Sign & Signal Co. v. Am. Bright Optoelectronics Corp*. No. 1:06-cv-279, 2008 WL 2951209 (W.D. Mich. Feb. 22, 2008) (expert testimony limited to scope of expert's written report; expert not permitted to opine on any issue beyond the scope of his report and deposition).  And without this connection, Mr. Singer would confuse and mislead the jury to believe this case involved a mundane, standard transaction.

**II.     U.S. BANK FAILS TO MEET ITS BURDEN OF ESTABLISHING THAT MR. SINGER'S REPLY REPORT AND RELATED TESTIMONY IS ADMISSIBLE.**

As explained in Sun Life's motion, the Reply Report is inadmissible for at least three reasons:  (1) it is not based on the actual facts of record; (2) it is not actually a rebuttal report because Mr. Singer fails to deal with any evidence of record which could support an opposite conclusion to the opinions reached by Sun Life's experts; and (3) Mr. Singer admits he is not qualified to rebut the opinions offered by Sun Life's experts.

U.S. Bank completely ignores this last point and does nothing to establish that Mr. Singer is qualified as an expert to respond to the opinions offered by Jeffrey Baskies concerning trust and estate planning issues, or the opinions offered by Paul Marcus concerning lending practices. And, as explained in Sun Life's motion, during his deposition, Mr. Singer admitted that he lacks such qualifications.  Singer Dep., 137:24-139:17; 70:20-75:17.  His lack of qualifications alone should preclude the Reply Report and all related testimony.

7

U.S. Bank also misreads the law with regard to rebuttal expert reports, claiming it is enough for Mr. Singer simply to "repel" the testimony offered by Sun Life's experts without needing to show any specific facts, let alone unforeseen facts, that actually rebut those opinions. U.S. Bank has it wrong.  Fed.R.Civ.P. 26(a)(2)(C)(ii) permits rebuttal expert testimony that is "intended solely to contradict or rebut *evidence* on the same subject matter identified by an initial expert witness." *TC Sys. Inc. v. Town of Colonie,* 213 F.Supp .2d 171, 179 (N.D.N.Y. 2002) (quoting Fed.R.Civ.P. 26(a)(2)(C), and discussing what is required of rebuttal experts under the Rule). (Emphasis added.)  Rebuttal reports "necessitate 'a showing of facts supporting the opposite conclusion' of those at which the opposing party's experts arrived in their responsive reports." *Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc*., No. 08-cv-1083, 2010 WL 3894444, at *15 (N.D.Ill. Sep. 30, 2010).

Here, without having actually read the underlying transaction documents, how is Mr. Singer able to rebut Mr. Baskies's opinion that, notwithstanding the stated purpose of the policy (*i.e.*, "estate planning"), the trusts at issue could not possibly have met any legitimate estate planning need because they weren't set up in a way to do so?  Likewise, how could Mr. Singer actually rebut Mr. Marcus's opinions about the supposed "loan" and whether it was structured like a legitimate lending transaction when Mr. Singer never looked at the loan agreement or any of the related documents?

The answer, of course, is that Mr. Singer cannot possibly offer any actual rebuttal opinions because he failed to take the time to review even a single document at issue in this case, and he cannot now cure this failure by coming forth with new opinions at trial.  *See Fisher v. Carnival Corp.*, No. 11–22316–CIV, 2013 WL 2157164 (S.D. Fla. May 17, 2013) (expert not be permitted to testify about the use of adhesive streams on the top bench of steam room because he

8

did not render this opinion in his expert report or in his deposition testimony); *Honeywell Int'l., Inc. v. Universal Avionics Sys. Corp.*, 289 F.Supp.2d 493 (D.Del. 2003) (excluding expert testimony about doctrine of equivalents because not contained in expert report). Yet, at the close of its Response, U.S. Bank suggests that Mr. Singer's role at trial will be to tell the jury whether Messrs. Baskies and Marcus "have made mistakes about ***the operational features*** and economics of the transactions they purport to have analyzed . . . ." Response, p. 9 (emphasis added). To be clear, the transactions Messrs. Baskies and Marcus analyzed are the case-specific transactions that involved Mrs. Malkin – including specifically the operational features of the particular documents that form the transactions in this case and which were used by stranger investors to procure the policy for purposes of wagering on Mrs. Malkin's life.

Mr. Singer certainly had every chance to similarly analyze these same case-specific documents – he could have done so in either of his two reports. But he chose not to. This renders both of his reports irrelevant and unhelpful.

### III.    CONCLUSION

It remains that Mr. Singer's First Report is clearly irrelevant to this case – it isn't based on a single fact of record, it offers opinions on topics not put at issue through the parties' pleadings, and it was actually written more than two years ago for a different case. With regard to Mr. Singer's Reply Report, U.S. Bank has failed to establish that Mr. Singer is qualified to offer opinion testimony on the topics covered by Sun Life's experts, and it remains that Mr. Singer's would-be rebuttal opinions are not based on any of the specific facts of this case. For these reasons, his reports and related testimony should be precluded.

Dated: December 14, 2015

        PETT FURMAN, PL
        2101 N.W. Corporate Blvd.
        Suite 316
        Boca Raton, FL 33431
        (561) 994-4311
        (561) 982-8985 (fax)

        By: <u>s/ Wendy Furman</u>
        Wendy L. Furman, Esq.
        Fla. Bar No. 0085146
        wfurman@pettfurman.com


        Gregory J. Star, Esq.*
        Gregory.Star@dbr.com
        Joseph Kelleher, Esq.*
        Joseph.Kelleher@dbr.com
        *Admitted pro hac vice*
        Kevin L. Golden, Esq.*
        *Admitted pro hac vice*
        Kevin.Golden@dbr.com
        DRINKER BIDDLE & REATH LLP
        One Logan Square
        Suite 2000
        Philadelphia, PA 19103
        (215) 988-2700
        (215) 988-2757 (fax)

        *Attorneys for Plaintiff Sun Life*
        *Assurance Company of Canada*

**CERTIFICATE OF SERVICE**

I certify that on December 14, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> John K. Shubin, Esq.
> Ian E. DeMello, Esq.
> Shubin & Bass, P.A.
> 46 S.W. 1st Street
> Third Floor
> Miami, FL 33130
> jshubin@shubinbass.com
> idemello@shubinbass.com
> eservice@shubinbass.com
> *Counsel for U.S. Bank*
>
> Steven J. Reisman, Esq. *(Admitted pro hac vice)*
> Jonathan J. Walsh, Esq. *(Admitted pro hac vice)*
> Nicole M. Mazanitis, Esq. *(Admitted pro hac vice)*
> Alyssa Astiz, Esq. *(Admitted pro hac vice)*
> Curtis, Mallet-Prevost, Colt & Mosle LLP
> 101 Park Ave.
> New York, NY 10178-0061
> sreisman@curtis.com
> jwalsh@curtis.com
> nmazanitis@curtis.com
> aastiz@curtis.com
> *Co-Counsel for U.S. Bank*

     s/Wendy L. Furman___
     Wendy L. Furman