**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 14-CIV-62610-BLOOM/VALLE**

SUN LIFE ASSURANCE COMPANY
OF CANADA,

      Plaintiff,

vs.

U.S. BANK NATIONAL ASSOCIATION,

      Defendant.
_____/

**U.S. BANK NATIONAL ASSOCIATION'S REPLY IN SUPPORT OF
THE MOTION TO AMEND AND CLARIFY FINAL JUDGMENT**

Defendant U.S. Bank National Association ("U.S. Bank") respectfully submits this reply in support of its Fed. R. Civ. P. 59(e) Motion to Amend and Clarify Final Judgment to Include Return of All Premiums Paid on the Malkin Policy, Plus Prejudgment Interest ("Motion to Amend"). (ECF No. 161).

## PRELIMINARY STATEMENT

The Opposition to the Motion to Amend ("Opposition") filed by Sun Life Assurance Company of Canada ("Sun Life") reads more like a motion for reconsideration. In its Opposition, Sun Life continues to argue that, contrary to this Court's January 14, 2016 Final Judgment (the "Judgment") (ECF No. 148), it is entitled to retain all premiums paid on the life insurance policy insuring the life of Phyllis Malkin (the "Malkin Policy" or "Policy"). This argument is procedurally improper and should be rejected for that reason alone. It should also be rejected on the merits because, as this Court noted, Sun Life's argument is directly contrary to Delaware authority, which this Court determined is applicable.

Sun Life further mischaracterizes U.S. Bank's Motion to Amend as an attempt to "claw-back cash" to which it is not entitled. (ECF No. 165, at p. 1). However, this Court granted summary judgment in U.S. Bank's favor on Count IV of its Counterclaims, which unambiguously requested the return of "all premium payments paid for the Malkin Policy to U.S. Bank, plus interest." (ECF No. 019, Counterclaims, ¶ 63).

If Sun Life is allowed to retain any of the premiums paid for the Policy, it will be unjustly enriched at the expense of U.S. Bank, a party that had no involvement in the application for and issuance of the Policy. Thus, it is Sun Life, not U.S. Bank, who seeks a windfall with respect to premiums paid. U.S. Bank is requesting only that the parties be returned to the status quo, namely, the positions the parties occupied before the issuance of the Policy. To this end,

1

U.S. Bank seeks the return of all premiums associated with the Policy, including those that were incorporated into the purchase price it paid for the Policy, and prejudgment interest, which Delaware law recognizes is designed to compensate a party for the time it has been unable to use its money.

## ARGUMENT

### I. Sun Life Should Not Be Allowed to Relitigate Whether U.S. Bank is Entitled to the Return of Premiums

Although Sun Life styles its response as an "Opposition" to the Motion to Amend, Sun Life asks the Court to amend its prior Judgment by reversing its summary judgment ruling as to Count IV. This request is procedurally improper. Sun Life cannot use a Rule 59(e) motion "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *See Waite v. AII Acquisition Corp.*, No. 15-CV-62359, 2016 WL 2346743, at *2 (S.D. Fla. May 4, 2016) (Bloom, J.) (quoting *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)).

Sun Life had the opportunity to (and did) raise these same arguments when Sun Life itself moved for summary judgment on Count IV of U.S. Bank's Counterclaims in its Motion for Summary Judgment. Indeed, Sun Life argued then that the parties should be "left as they are found" and requested that the Court "enter a declaration that Sun Life is permitted to retain all premiums." (ECF No. 065, at p. 25). In its Opposition to Sun Life's Motion for Summary Judgment, U.S. Bank cited to the line of federal cases Sun Life now asserts were incorrectly decided. (ECF No. 098, at p. 26). Sun Life made no attempt to distinguish these cases in its summary judgment reply brief when it had the chance to do so. (ECF No. 124). Given the parties' briefing on this issue, Sun Life cannot now claim it was "unaware" that the

2

Court was considering summary judgment on Count IV. Sun Life's attempt to relitigate the return of premiums should be rejected.

## II. Delaware Law Requires the Return of Premiums to U.S. Bank

Even if the Court were to allow Sun Life to relitigate this issue, courts in Delaware have flatly rejected the argument that an insurer may retain premiums on a policy that is void *ab initio*. *See Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 774 F. Supp. 2d 674, 680 (D. Del. 2011) (an insurer "may not seek to have the Policy declared void *ab initio*, as it has, and also retain premiums obtained from that policy"); *Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 565 (D. Del. 2010) (same); *Sun Life Assur. Co. of Can. v. Berck*, 719 F. Supp. 2d 410, 419 (D. Del. 2010) (same). These decisions recognize that allowing insurers to retain a windfall of premiums would be inequitable as it would fail to return parties to the status quo and "would have the undesirable effect of incentivizing insurance companies to bring rescission suits as late as possible, as they continue to collect premiums at no actual risk." *Berck*, 719 F. Supp. 2d at 418-19.

And while Sun Life argues that none of the cases relied on by these Delaware courts involved contracts found to be void *ab initio*, the courts expressly considered the distinction between voidable and void *ab initio* contracts and made clear that the insurer cannot retain premiums in either instance. *See Snyder*, 722 F. Supp. 2d at 564-65 (considering whether policy was "voidable" or "void *ab initio*" and holding that insurer may not retain premiums in either case); *Rucker*, 774 F. Supp. 2d at 679 (D. Del. 2011) (same).[1]

---

[1] Sun Life emphasizes that *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust, ex rel. Christiana Bank & Trust Co.*, 28 A.3d 1059 (Del. 2011) was decided after these decisions. However, *Price Dawe* merely clarified the circumstances under which a life insurance policy is declared void *ab initio*. It did nothing to change existing law requiring the return of premium payments on a policy declared void *ab initio*.

3

Importantly, Sun Life does not cite to a single case in the insurable interest context and instead asks the Court to conclude that the Delaware line of cases was incorrectly decided based on language from non-insurable interest cases that apply the *in pari delicto* doctrine in certain circumstances to bar claims between wrongdoers. Since Delaware courts have already addressed this question within the specific context of insurable interest, a ruling in Sun Life's favor would require the Court to reject the clear weight of authority from Delaware courts.

Further, Sun Life repeatedly mischaracterizes Delaware court decisions by stating that they provide no sanction for participating in a STOLI scheme besides "rescission coupled with a premium refund" and that illegal and fraudulent conduct will therefore "not be deterred." (ECF No. 165, at p. 8). Delaware law and the cases that U.S. Bank has cited provide a clear remedy to deter this conduct: the insurer can sue the responsible party. *See e.g. Rucker*, 774 F. Supp. 2d at 683 ("[O]nce the evidence establishes those individuals and/or entities responsible for the 'scheme or plan' to evade the law against wagering contracts resulting in the issuance of the Policy . . . [insurer] may be allowed to recover damages incurred as a result of the issuance of the Policy."). Thus, the insurer has the remedy of seeking damages and asserting a claim against the responsible party.

Sun Life was well aware of this remedy – it initially named Larry Bryan, the Policy broker, as a defendant in this lawsuit, alleging that he caused the Policy to be issued through the kind of illegal conduct it claims must be deterred. (ECF No. 001, ¶¶ 41-51). Sun Life could have pursued its claim against Bryan for the commissions it paid to him relating to the Policy. But Sun Life instead settled its claim against Bryan for nothing, indicating that Sun Life was less interested in deterrence than in securing Mr. Bryan's cooperation in pursuing the death

benefit payable to U.S. Bank. (Deposition of Larry Bryan conducted on October 22, 2015, at 11:13-12:10 (Declaration of Jonathan J. Walsh dated June 3, 2016 ("Walsh Decl. II"), Ex. H). Having now received that cooperation and a judgment that the death benefit is not payable, Sun Life cannot recover on claims it has already settled with the responsible party by seeking against U.S. Bank improperly placed damages claims that it voluntarily agreed to forego against Mr. Bryan.

None of the cases cited by Sun Life stand for the general proposition that "a court applying Delaware law that encounters an illegal contract is instructed to leave the parties where it finds them and refrain from affording any relief." (ECF No 165, at p. 5). Courts have only applied the doctrine of *in pari delicto* when the parties are "in equal fault." *See Burns v. Ferro*, No. C.A. 88C-SE-178, 1991 WL 53834, at *2 (Del. Super. Mar. 28, 1991) ("[w]here parties to a contract are *in pari delicto*, a court will 'leave them where it finds them' . . . . A plaintiff who participates in a fraudulent scheme may not sue and recover for injuries that arise out of the same transaction"); *In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*, 976 A.2d 872, 882 (Del. Ch. 2009) ("under the *in pari delicto* doctrine, a party is barred from recovering damages if his losses are substantially caused by activities the law forbade him to engage in").[2] Thus, the *in pari delicto* doctrine is only applied against parties that were knowing and substantial participants in an illegal scheme. These cases do not stand for the principle that a court must simply "walk

---

[2] The other cases cited by Sun Life are in accord: *Morford v. Bellanca Aircraft Corp.*, 45 Del. 129, 139, 67 A.2d 542, 547 (Del. Super. 1949) ("The authorities are practically unanimous in saying that, where parties are *in pari delicto*, a Court will leave them where it finds them."); *Morente v. Morente*, No. 16763, 2000 WL 264329, at *3 (Del. Ch. Feb. 29, 2000) ("Assuming . . . that [the parties] are equally blameworthy as co-conspirators in a fraudulent transfer, . . . the court will leave the parties where it finds them"); *Eisenman v. Seitz*, 26 Del. Ch. 185, 25 A.2d 496, 498 (1942) (refusing accounting on agreement in violation of statute in which "all parties participated.").

away" anytime it encounters a contract that is void *ab initio*. Such a blanket rule would no doubt result in unjust rulings. *See Ohio Nat. Life Assur. Corp. v. Davis*, 803 F.3d 904, 911-912 (7th Cir. 2015) (returning premiums on void *ab initio* life insurance policy to investor who purchased policy as an investment in order to prevent insurer from being "unjustly enriched").

Sun Life has neither alleged nor established that U.S. Bank was a "knowing and substantial participant" in the procurement of the Malkin Policy. Indeed, the rationale of these decisions, to deter wrongful conduct, is entirely inapposite in the present case because U.S. Bank was not involved in the application for or issuance of the Policy and would never have purchased a policy it was aware had been procured illegally.

### III. U.S. Bank is Entitled to a Return of All Premiums Associated with the Policy

#### A. The Premiums Paid Prior to U.S. Bank's Purchase of the Policy Were Incorporated Into the Policy Purchase Price

The $255,000 purchase price of the Malkin Policy was reflective of the $238,050 in premiums paid prior to the purchase of the Policy. (Declaration of Amy Welsh, dated June 1, 2016 (the "Welsh Decl."), ¶ 5 (Walsh Decl. II, Ex. I)). Therefore, any refund of premiums paid on the Malkin Policy is owed entirely to U.S. Bank because the prior owner has already been compensated for the payment of these premiums. *Id.*

The sale documents cited by Sun Life in its Opposition are not to the contrary. The fields highlighted by Sun Life, ("Reimbursement of Premiums or Interest on Policy Loans" and "Premium Reimbursement to Seller"), do not concern whether prior premium payments were incorporated into the sale price of the Policy. Rather, these fields were populated either when a policy was in a grace period (because sufficient premiums had not been paid) and Coventry First or the seller paid the premium to keep a policy in force prior to the completion of a transaction, or when Coventry First paid the premium prior to selling it and was seeking

6

reimbursement for that premium payment. *Id.* at ¶ 6. These premiums would later be reimbursed and the amount of this reimbursement would be reflected in these fields. *Id.* The fact that these fields are blank does nothing to alter the economically obvious proposition that the $255,000 that U.S. Bank paid for the policy reflected among other things the cost of premium payments made by the previous owner of the policy.

### B.   U.S. Bank Properly Pled a Claim for the Return of All Premiums

In Count IV of its Counterclaims, U.S. Bank sought the return of "all premium payments paid for the Malkin Policy, plus interest."[3] Sun Life argues that U.S. Bank "only ever referred" to the amount it directly paid to Sun Life in its Counterclaims, and thus U.S. Bank's recovery is limited to that amount. (ECF No. 165, at p. 11). U.S. Bank referred to this amount only to show that it had complied with all the conditions of the Policy by making timely and consistent premium payments, and that the Policy was in force when U.S. Bank made its claim for the death benefit. (ECF No. 019, Counterclaims, ¶¶ 3, 29, 37, 39). This was the basis for U.S. Bank's claim for payment of the death benefit. *Id.* at ¶ 46. As to the return of premiums, U.S. Bank clearly, in Count IV, sought an order requiring Sun Life "to return *all* premium payments paid for the Policy." *Id.* at ¶ 63 (emphasis added). The Court granted summary judgment on the Counterclaim and ruled that "U.S. Bank is entitled to a return of the premiums associated with the Malkin Policy." (ECF No. 147, at p. 47). Sun Life cannot now argue that there was any ambiguity regarding the relief U.S. Bank was seeking and what the Court ultimately granted: a return of all the premiums paid to Sun Life.

---

[3] Sun Life asserts that U.S. Bank's use of the term "return" somehow overrides the unambiguous meaning of "all premiums paid for the Malkin Policy." However, "return" is often used to mean, "to bring, give, send, or take (something) to the place that it came from or the place where it should go." *Return*, MERRIAM-WEBSTER ON-LINE DICTIONARY, http://www.merriam-webster.com/dictionary/return (last visited May 31, 2016). No definition of the word "return" would allow Sun Life to keep a portion of the premiums paid for the Malkin Policy.

7

### C.  Sun Life is Not Entitled to Offset the Premium Return With Its Expenses

Sun Life seeks to offset the refund of premiums with the "costs and expenses" it has allegedly incurred in connection with the Policy. (ECF No. 165, at p. 9). However, under Delaware law, an insurer is permitted to seek damages and expenses resulting from the issuance of an illegal policy only from the party responsible for the issuance of that policy. *See Rucker*, 774 F. Supp. 2d at 682-83 ("[O]nce the evidence establishes those individuals and/or entities responsible for the 'scheme or plan' to evade the law against wagering contracts resulting in the issuance of the Policy . . . [insurer] may be allowed to recover damages incurred as a result of the issuance of the Policy."); *Berck*, 719 F. Supp. 2d at 419 (plaintiff may properly seek damages for expenses incurred as a result of defendant's alleged behavior); *Snyder*, 722 F. Supp. 2d at 565 (same). Here, U.S. Bank had no involvement with the alleged illegal procurement of the Malkin Policy and Sun Life has never alleged otherwise. Therefore, damages cannot be properly sought from U.S. Bank as an offset to the recovery of premiums.

Sun Life's claim that it may offset the premium refund with commissions paid to Bryan is inequitable and would result in precisely the sort of double-recovery Sun Life accuses U.S. Bank of seeking. Sun Life named Bryan as a defendant in this action and sued him for damages resulting from his procurement of the Policy. It later chose to settle this claim in exchange for favorable testimony. Sun Life cannot now recover these damages as an offset to the premium refund owed to U.S. Bank, a party that was not involved in causing the issuance of the Policy. Nor can Sun Life complain about the inequities of not being made whole for its outlay of commission payments and other sales expenses because it was Sun Life's own choice to settle the claim against Bryan.

Sun Life insists that a return to the status quo is "not supported by the equities." (ECF No. 165, at p. 13). In so arguing, Sun Life asks this Court to reject the sound reasoning

and policy judgments of the Delaware courts and substitute for them the reasoning of courts applying other state's laws. However, the rationale underlying these decisions has been considered and rejected by Delaware courts. *See e.g. Rucker*, 774 F. Supp. 2d at 683 (refunding premiums and requiring insurer, rather than policy owner, to seek damages from parties responsible for issuance of policy). Allowing Sun Life to retain some or all of the premiums would enrich Sun Life at the expense of U.S. Bank. This result would encourage insurers to adopt the strategy Sun Life has adopted here – to enable an admitted wrongdoer like Mr. Bryan to escape financial responsibility in exchange for his assistance in pursuing claims to void the policy, retain premiums, and/or recover costs from bona fide secondary market purchasers that played no role in the alleged fraud. It would also encourage insurers to ignore red flags long after they become aware of a possible lack of insurable interest and continue to profit until an eventual death claim before voiding the policy.

## IV.   U.S. Bank is Entitled to Prejudgment Interest

Sun Life cites to inapposite case law in arguing that U.S. Bank is not entitled to prejudgment interest because U.S. Bank "never asked Sun Life to return any premiums." (ECF No. 165, at p. 14). These cases arose in the context of claims for the advancement of litigation expenses and do not apply to situations where payments were made pursuant to a contractual schedule. *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992) ("*Under this contractual scenario*, [Plaintiff] is entitled to interest computed from the date of demand.") (emphasis added).

The blanket application of Sun Life's proposed rule would be impracticable because many cases, as here, involve the refund of payments already made. In these cases, prejudgment interest accrues at the time of the payments that are subject to refund. *See Segovia v. Equities First Holdings, LLC*, No. 06C09-149-JRS, 2008 WL 2251218, at *23 (Del. Super.

9

May 30, 2008) (awarding prejudgment interest from dates recovering party paid origination fees on a loan agreement and made interest payments); *see also Valeant Pharm. Int'l v. Jerney*, 921 A.2d 732, 755 (Del. Ch. 2007) (awarding prejudgment interest on a rescinded payment of $3 million from the date the payment was received because the defendant "had the use of $3 million of the company's money since" that date).  Any contrary rule would leave the recovering party uncompensated for much of the time during which they had lost use of their money.

Delaware courts recognize that prejudgment interest is necessary "to ensure that [the party awarded judgment] is fully compensated for the loss of the time value of [its] money." *Brandin v. Gottlieb*, No. CIV. A. 14819, 2000 WL 1005954, at *30 (Del. Ch. July 13, 2000). The award of prejudgment interest is not a windfall, but rather a necessary measure to return a party to the status quo.  Accordingly, under Delaware law, "[a] successful plaintiff is entitled to interest on money damages as a matter of right from the date liability accrues." *Jerney*, 921 A.2d at 755 (quoting *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 409 (Del. 1988)).

## **CONCLUSION**

U.S. Bank respectfully requests that this Court amend the Judgment to clarify that: (a) Sun Life must pay to U.S. Bank all premium payments paid on the Malkin Policy since its date of issue, in the total amount of $1,096,573.13; and (b) Sun Life must pay to U.S. Bank prejudgment interest in the amount of $329,529.73, as calculated from the date each payment was made at the Delaware statutory interest rate to the date of the Court's Judgment.

Date:   June 3, 2016                                  Respectfully submitted,

                                                             /s/ Juan J. Farach
John K. Shubin (Fla. Bar No. 771899)
jshubin@shubinbass.com
Juan J. Farach (Fla. Bar No. 957704)
jfarach@shubinbass.com
Ian E. DeMello (Fla. Bar No. 105097)
idemello@shubinbass.com

SHUBIN & BASS, P.A.
46 SW First Street, Third Floor
Miami, Florida 33130
Tel:   (305) 381-6060
Fax:   (305) 381-9457

Steven R. Reisman (admitted *pro hac vice*)
sreisman@curtis.com
Jonathan J. Walsh (admitted *pro hac vice*)
jwalsh@curtis.com
Nicole M. Mazanitis (admitted *pro hac vice*)
nmazanitis@curtis.com
Alyssa J. Astiz (admitted *pro hac vice*)
aastiz@curtis.com

CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

*Attorneys for Defendant and Counterclaim Plaintiff U.S. Bank National Association*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by email[4] on June 3, 2016, on all counsel or parties of record on the Service List below:

Wendy Lynn Furman
Pett Furman PL
2101 NW Corporate Boulevard
Suite 316
Boca Raton, FL 33431-7343
Phone: (561) 994-4311
Fax: (561) 982-8985
Email: wfurman@pettfurman.com

Gregory J. Star
Joseph Kelleher
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Phone: (215) 988-2535
Fax: (215) 988-2757
Email: Gregory.star@dbr.com
Email: joseph.kelleher@dbr.com

*Attorneys for Plaintiff*

/s/ Nicole Mazanitis
Nicole Mazanitis

---

[4] We note that the ECF filing system is temporarily unavailable from Friday June 3, 2016 at 5:00 p.m. until Monday June 6, 2016 at 8:00 a.m.  As such, we emailed this Reply and the Walsh Declaration and corresponding exhibits to the above named parties and will e-file these documents on the morning of June 6, 2016.